The next case that we have today is Welliver v. MSPB Mr. Eagles, am I pronouncing that correctly? Yes, sir. E-I is like Eisenhower, so it's Eagles. Yes. May it please the court, representing Fatima Welliver, the petitioner in this case, the essential issue before the court is whether Ms. Welliver voluntarily withdrew her case from the Merit Citizens Protection Board with regard to her appeal of removal from her employment with the Social Security Administration. As background to this case, Ms. Welliver is a native Brazilian who speaks four languages and has an undergraduate degree from Ohio State University in international relations. Ms. Welliver speaks Spanish and Portuguese. Let me ask you, doesn't your theory to prevail in this case require or depend on our conclusion that the withdrawal was invalid because your client was prejudiced by the pretrial rulings of the AJ? Is that the theory? No. Okay. What's the theory? It was only prejudice that then we would have gone forward with the hearing and as for an appeal subsequently. But the basic problem was that the administrative law judge had a number of things which in our due process. So is your theory that when an AJ denies due process rights to an appellant in the pretrial proceedings, that appellant, any withdrawal of the case by the appellant is involuntary? No. Okay, sorry. Go ahead. That's too sweeping. What happened here is that during the pre-hearing conference, which was rescheduled by the administrative judge from August 25 to August 27, 2004, when the hearing was scheduled to be scheduled September 1, 2004, in the first instance, the administrative judge decreased the interim time span from four business days to two, number one. Number two, at the pre-hearing conference, the administrative judge had committed to issuing subpoenas for Rebecca Gottelman and Bobby or Robert Keaton to appear at the administrative hearing. This was a commitment. And further, she said if there was any problem to serve subpoenas, that we could call her. Well, he said she would issue the subpoenas the following Monday in the hearing, so Wednesday. And also at the pre-hearing conference, she said she would fax them to me. Well, I waited Monday. I didn't hear from her. And then I called Tuesday morning and learned, as she indicated I should, and I learned from her staff that she wasn't in Monday or Tuesday. So then I called and then without the subpoenas, we could not cross-examine Rebecca Gottelman at the hearing on September 1. And this was essential because it was that testimony, among others, that that was a basis for the removal. And that's the crucial point of denial of due process. We would not have the opportunity to cross-examine Rebecca Gottelman at the hearing. And the thing is, counsel on the other side says, well, if we appeared at the hearing and couldn't cross-examine, then the hearing might have been rescheduled. But in light of all that went on, the improper rulings, denying evidentiary development, foreshortening the time between the pre-hearing conference and the hearing, and then further, the fact that the administrative judge just indicated she would issue subpoenas, did not issue subpoenas, she said I would. Well, what prevented you from raising these issues on appeal to the full board? And if you were unsuccessful on appeal to this court, why did this cause the, in your view, involuntary withdrawal? Well, the thing is, sir, without opportunity to cross-examine this crucial witness. So you could have preserved the objections that it's not proper to go forward with this hearing if this witness is not available for cross-examination. And we object to that. And if the administrative judge agrees with you, you'd have relief. And if the administrative judge didn't agree with you, you could raise it on appeal. What's the problem? Well, in light of the administrative judge hadn't made a commitment to issue subpoenas, she didn't do it. She said at the pre-hearing conference that if there was a problem, I could call. She didn't make herself available. The hearing, basically, would not have been a hearing for fact-finding. In fact, the whole thing, the whole process, based upon what the administrative judge had done, would have been a charade. And then at the hearing, the judge said that at the pre-hearing conference, the judge said, well, there could be enough other witnesses. He didn't know that he would be able to call Ms. Gottelman then. And then on the one hand, on the other hand, she says, well, I don't know that it will carry a second day. So with all of this, in terms of the way she conducted the process, and even to schedule a hearing and provide the subpoenas and work things out the way she could do it. Do you have any cases, not on the point as to whether or not her rulings were prejudicial or violative of due process, but on the point of the waiver issue, sort of on the voluntariness, are there any instances where the board has ruled that when someone withdraws their appeal at this stage, that the AJ's conduct, the prejudicial conduct beforehand, would allow the reinstitution of the appeal? Well, there was one case in our brief, the DeSoto case, where the board had that if the administrative judge should have told the claimant the effect of the withdrawal. Well, we did not just withdraw ipso facto arbitrarily. I called her office. I asked her to call back. Yeah, but you're not alleging here that there was a problem with the AJ's disclosure to your client or to you, the impact of the withdrawal. That's not part of the case. Well, AJ did not make herself available as she said she would. If she had done so, then he could have informed me as to what the impact of it is if it was adverse. But the withdrawal was based on her conduct in terms of the process of the administrative process and the hearing itself. So crucial to this consideration is the fact that at a pre-hearing conference, she said she would issue this payment. She said if there's a problem for service, I could call her. And no subpoenas were issued. I did call her. I called the office twice and asked for her to get back to me. I gave her the phone number, and nothing happened. What would go forward under those circumstances is the hearing, without the opportunity to present our evidence as she indicated we would have, is not viable. So if I hadn't undertaken those efforts to contact her, to discuss it with her, to get her guidance, he would be far different. Then we could say that he didn't misadvise us. But the fact that she indicated that we could call her, she wasn't there. She made herself unavailable for that communication, that important communication, where she could have advised us as to the import and how, or alternatively, how we could go forward. She didn't do that. And that appears to be the essential problematical element  CHIEF JUSTICE ROBERTSON, JR.: OK, Mr. Argyles, I think you're, if you want to save your rebuttal time,  MR. ARGYLES, JR.: Yes, thank you. CHIEF JUSTICE ROBERTSON, JR.: OK. Judge Lind, do you have any questions? Well, I would ask this. Mr. Argyles, what is the test determined when an express motion for dismissal is involuntary and should be overturned? And what case supports that test? Well, I didn't find anything with this type of factual situation, but by the, again, if we look at the De Soto case, the board has an, or the administrative judge has an obligation to discuss and advise the claimant. Now here, the administrative judge made herself unavailable to do so when, in fact, she said she would. So what do we do in that circumstance? We're relying upon her commitments and representations in the pre-hearing conference. She did not comply with what she said she would do. We tried to obtain compliance. We called her twice on that Tuesday before the hearing, before we finally faxed in that motion to dismiss. She was not available. She didn't get back to us. In fact, I called Tuesday morning and waited until the end of the day. Going beyond the response to Judge Lynn's question, does Judge Lynn have any other questions? No, thank you. That's fine. OK, we'll restore two minutes of your rebuttal time. All right, thanks. May I please the court? There's two points I want to make. First, to clarify the factual circumstances around the hearing and the judge's absence, which are relied on so heavily by the petitioner. At the pre-hearing conference, the judge did authorize the witnesses that the petitioner was seeking and stated that she would issue a subpoena for the witnesses on Monday. And that even at the time, counsel expressed concern that they might not be available for a Wednesday hearing. And she assured him that she would make alternate arrangements for them to be present if that were not possible. And already, two additional dates were scheduled for the hearing. On Tuesday, counsel called the board and learned that Judge Squires was out of the office on Monday and Tuesday. And therefore, the subpoenas could not be issued. He doesn't say whether he asked what was the nature of her duty status, and it's not in the record, although the board's records show what her duty status was those days. But she was not in the office. Since she had assured him, the counsel did not leave a message asking her, well, what about my witnesses? They won't be available on Monday. Will you guarantee that we'll have a hearing later? Instead, he simply left a message saying, I've discussed with my client in length, and we've determined to withdraw the appeal. It's true he did say, please call me, but he didn't express any qualifications about the withdrawal. And further, later the same day, the written motion to dismiss the appeal, it's on joint appendix 158, was faxed to the board. So when the judge returned to the office on Wednesday, she had not only the message from the phone message, but she had the follow-up unqualified motion to dismiss the appeal with prejudice. She could justifiably assume that any question he had about the withdrawal had been resolved. All of this seems to predominantly focus on the testimony of this one witness. This particular witness, yes. This particular witness's accusations, or whatever we want to call them, they were relied upon by the agency, were they not? Yes. In taking the action against the appellant. Yes. So was the agency planning on calling this witness, this person as a witness in its case? Because the agency ultimately had the burden in the first instance. No, the agency was planning to rely entirely on her affidavits, which is why, of course, Petitioner wanted to call her, so that he could cross-examine her. And that was true, I believe, also of the other witness to be called this day, that it was someone who had given evidence, or that the agency was relying on, that he wished to cross-examine. And the judge had already indicated, or everyone assumed it was clear that the agency would be able to rely on the affidavits, in terms of making its case. Yes. Are you, to come back to the question that both Judge Linn and Judge Prost asked earlier, are you aware of any board precedent that suggests that a procedural error in the course of proceedings can render the withdrawal of the appeal involuntary? No, I don't believe there are any cases. And I didn't find any cases in any other tribunal. The board's rule is that a withdrawal is an act of finality that withdraws the case from the board's jurisdiction. And absent unusual circumstances, such as misinformation or duress, the board will not reinstate an appeal which has been withdrawn, merely because the appellant has changed their mind about it. What is duress? You said duress. What kind of cases, what do the cases say about what constitutes duress? The only case of that kind that I located was where an appellant claimed that the agency had warned him that if he persisted in his appeal, he might lose his retirement benefits. And anyway, even if he won, he'd be harassed when he came back to work.  Then he sought reinstatement, made this allegation to the board. And the board said, well, that's certainly a non-fulfillment allegation of coercion and remanded for a hearing. Misinformation is more usually the basis, most commonly in cases involving the interplay between the board's appellate procedure and the collective bargaining and grievance procedure, where there are various rules. Appellants have withdrawn their appeal because they thought that would assure them of ability to go to arbitration in the grievance. But they were wrong about that. And the issue was, well, did the agency inform them of the rules correctly? And since they have, they lose in those cases. Or I guess they would win if it was found they had been misinformed by the agency. So it's a pretty classic type of doctrine about whether these actions are going to be taken at face value or not. There's some mitigating circumstances like this that you can bring forward. And it's my understanding that our judges generally, in the case of a pro se appellant, will take greater pains to ensure that they understand what they're doing. But here we have a motion that says the petitioner hereby moves to dismiss her appeal with prejudice. And the board is entitled to take at face value what its parties say. I mean, it's sort of a necessary part of running a proceeding of this kind. I don't know if you would like me to address some of the issues about the discovery rulings. The principal issue that he's raised about the hearing witness, I believe that it's fairly clear that the judge had already indicated that if there were any problem with the witnesses being there on Wednesday, she would make alternate tape arrangements. And in light of that, it should at least have asked her if she wouldn't do that, which she could have done at the hearing on Wednesday, or he could have left a phone message. And your position is that therefore, notwithstanding how egregious. I mean, assume hypothetically that we all stipulate that what an AJ did in a case was absolutely a violation of due process, in terms of the way the pretrial methods were conducted. Is your view that under certain circumstances, that would justify the withdrawal beforehand? Or is your view that that can never be a basis for challenging an earlier withdrawal? I don't really think it would be a basis, because the system is set up that their appellate review is provided. There is a board regulation, 1201.42, which permits the person to file a motion for a judge to disqualify themselves for bias. And if that is denied, they can then request to be certified to the board for the board review of the disqualification. Obviously, those aren't regularly made. But in an egregious case, the judge might feel they have to be certified. So in a case where, let's assume the AJ makes it clear to the parties beforehand that she's just not allowing any witnesses to be presented by the petitioner, the petitioner is still required to have their lawyer come and sit there through the proceeding, and then raise an objection to that. There could be a case where they were seeking extraordinary relief intervention by the board would be permitted, sort of like a mandamus. I don't know of any cases like that. It just seems that withdrawal is intuitively  prevents further review, which is what you want, of course, in those situations. OK. Judge Lind, do you have any questions for Mr. Murrow? I have further. OK. Thank you. Oh, nothing further. Nothing further. Thank you. You have two minutes, Mr. Eigel. Well, thank you, sir. Your Honor, I submit that the Soto case that we discussed is in point here, because the AJ has an obligation to properly advise a claimant as to the effect of withdrawal. Now, the AJ did not make herself available to discuss this in her office, as she indicated she would. If she had, we could have discussed it. I specifically called twice that day. And if she had made herself available to discuss it, as she indicated she would, then she could have informed me of effects of withdrawal. She could have informed me of rescheduling and would not have filed the motion. The motion, as I say, was filed on the basis that basically we were caught between a rock and a hard place. We didn't have subpoenas. We couldn't have witnesses, which were essential to cross-examine in light of the horrendous charges as the basis for removal. Thank you. Thank you. The case is submitted. And that concludes our session for today. All rise.